UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LESLIE WALKER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 15-2000 (RMC) |
| CHILDREN'S NATIONAL MEDICAL CENTER, | ) |
| Defendant. | ) |

**OPINION**

Leslie Walker sues Children's National Medical Center for alleged retaliation in anticipation of her testimony concerning a former employee's charge that Children's had discriminated against the employee in violation of the Americans with Disabilities Act (ADA). Ms. Walker brings her retaliation claim under Title VII of the Civil Rights Act of 1964, not the ADA. Neither party noted the disconnect and have briefed summary judgment as if it presented a question of retaliation under Title VII.

It does not, and Ms. Walker's Title VII claim must fail as a matter of law. The underlying claim by the former employee was brought under the ADA; alleged retaliation against Ms. Walker for her testimony concerning that claim might have violated the ADA but not Title VII, the statute on which the Complaint and the briefs rest. For the reasons discussed below, the Court finds that it would be futile to allow Ms. Walker to file an amended complaint. For these reasons, summary judgment will be granted to Children's National Medical Center.

**I. FACTS**

After a break in service, Leslie Walker was re-hired by Children's National Medical Center (Children's) in September 2013 as a temporary staff assistant in the Division of

1

Fetal Medicine of the Children's Fetal Institute. Compl. [Dkt. 1-1] ¶ 5. She was promoted to Operations Coordinator in November 2013, which was a permanent supervisory position in the Fetal Institute. *Id*. ¶ 6. In her new position, Ms. Walker supervised Tamika Palmer and Sheralysta Faulkner. Mot., Ex. B, Deposition of Leslie Walker (Walker Dep.) [Dkt. 13-3] at 39. Ms. Walker's immediate supervisor was Dr. Andre DuPlessis and her next level supervisor was Paula Wadley. *Id*. at 41-43.

On January 23, 2014, Mses. Palmer and Faulkner complained to Ms. Walker about work conditions, in a conversation one of the employees secretly audio-recorded. Both women were concerned about the noise resulting from construction on the neighboring section of the medical center. Mot., Ex. C, Transcript of Recorded Conversation (Conversation Tr.) [Dkt. 13-4] at 2 ("When I came in this morning, that noise was so loud the ground shook."); *id*. at 3 ("[I]t's real loud, and like today, like literally, the banging on the floor."). Due to the noise, both women reported headaches and other ear-related ailments. *Id*. at 2 ("That weekend my ear hurt, it felt like water was in my [ ] ear, like swimmer's ear, so I came in Monday and it got worse. You know, I didn't think too much of it, so I did a little bit of research and you know, it said the ringing, the humming, and it's almost like a whistling in my ear, it can come from noise exposure."); *id*. at 3 ("I'm having the same issues. Well, I've been having headaches and all kinds of stuff going on, and I went to the doctor on Monday, and she checked my ears and saw they were real moist, and she asked about my noise exposure as well."); *id*. ("I'm not able to hear as well, I'm getting headaches and things like that.").

Ms. Walker responded that Mses. Palmer and Faulkner could take sick leave if they needed to be absent from work or she could try to find another location in the building for them to work. *Id*. at 4-5. Ms. Faulkner had already gone to Occupational Health at Children's

2

and been told that if she were having problems hearing she should notify her manager and maybe file for worker's compensation for a work-related injury. *Id*. at 5-6. Both employees indicated they had been experiencing ear problems for a couple of months. *Id*. at 6.

Ms. Walker attempted to contact Dr. DuPlessis for advice but he told her to call Ms. Wadley. Ms. Wadley was not immediately available. *See id*. at 6-8. Ms. Walker then told Mses. Palmer and Faulkner that they could go to urgent care, but that she did not "know how [compensation stuff] goes or how that works, but at least there will be documentation, we'll have your documentation, because they're going to beat you up with that if you don't." *Id*. at 9. Ms. Walker testified at her deposition that she also said "[t]hey're going to chew you up and spit you out," explaining that she meant that "if it's going to be Workman's Compensation that you're filing, then you need to get your documents and you need to fill it out, you need to go to your doctor and be seen, you need to sign in in Occupational Health, follow the right procedures, because if not, [Children's is] going to beat you up and spit you out or chew you." Walker Dep. at 99-100. Ms. Walker also warned that Children's could "dismiss you from your job if they find that anything is not [true]." Conversation Tr. at 11.

After further discussion, Ms. Walker called George Francois, assistant to Paula Wadley, to get advice on how the employees should proceed. *See id*. at 18-20; Walker Dep. at 105-106. After a brief conversation with Mr. Francois, Ms. Walker told the employees that she needed to speak to Ms. Wadley before she could advise them on what they should do. *See* Conversation Tr. at 20-21. Nonetheless, she continued to question Mses. Palmer and Faulkner about their complaints and what relief they were seeking. Once Ms. Faulkner asked "to go on workmen's comp because of [her] hearing loss," *id*. at 24, Ms. Walker told both women to go to the human resources department to obtain the required paperwork. *Id*. at 25. Rather than

3

conclude the conversation with that advice, Ms. Walker continued to engage with the employees and made the following statements about their potential claims:

- "Just be very thorough and be sure that what you get is on paper, and be sure that you do what you're going to do." *Id*. at 27.

- "You need to go [to occupational health] and you need to sign in to occupational health. Occupational health needs to see you and needs to tell you on record." *Id.* at 29.

- "And really to be honest, I would not advise both of you to go together, but then again, it might be beneficial to you if it's going to be a compensation thing, you know. I'm just saying document it, cross your T's and dot your I's, you know, because you're messing around and won't have a job with Children's, and I know, because Children's just up and they just, they can deuce you with a click of a finger because of past history, past taking off, past this, past that, you know. And you know, even down to, you know, so much time being taken off, you know, at this phase, this phase, this phase, then they cross check, you've got to really watch stuff, really watch stuff. Don't f[--]k around and lose your job because of bulls[--]t." *Id*. at 29-30.

- "Watch yourself with compensation, because I'm letting you know, they let – I can't think of, and I probably shouldn't say her name anyway – they let her go and she thought her s[--]t was covered with [the Family Medical Leave Act], and they let her go because her documentation was not justified. . . . No, it was not justified, and they took it to legal service and legal services said negative, and she was supposed to return on Monday. And when she returned that Monday, they told her to come to [human resources]. When she went to [human resources], they escorted her upstairs, let her get her stuff, and she lost her job on a technicality." *Id*. at 32.

- "So, you know, you need to make sure that your doctor's documentation says nothing about flu-like symptoms or this or that, or this or that, you know, because that could be a reason to go to the doctor and the doctor look in your ears, you know." *Id*. at 35.

- "Watch yourself, don't f[--]k around and lose your job over some bulls[--]t." *Id*. at 36.

None of these statements is challenged by Ms. Walker and she repeatedly admitted during her deposition that she should not have made them. Walker Dep. at 100, 102, 122, 131.

Mses. Palmer and Faulkner both took leave from Children's under the Family and Medical Leave Act (FMLA), which grants time off for illness for either 16 weeks under D.C. law, D.C. Code 32-501 *et seq*., or 12 weeks under federal law, 29 U.S.C. § 2601 *et seq*. At some point after her FMLA-covered leave ended, Children's told Ms. Faulkner that it needed to fill her position and, because she was not yet cleared by her doctor to return to work, Children's discharged her and hired someone else. Ms. Faulkner filed a discrimination charge on June 16, 2014, claiming that Children's violated the ADA, Mot., Ex. E, Faulkner ADA Charge [Dkt. 13-6], when it fired her. Specifically, she complained that she "was injured at work after [she] heard a loud explosion noise" but that her supervisor, Leslie Walker, "intimidated [her] and tried to discourage [her] from filing a Workers' Compensation claim." *Id*. at 1. Ms. Palmer filed a similar discrimination charge on September 28, 2014 claiming she was "denied an accommodation and discharged due to [her] disability." Mot., Ex. F, Palmer ADA Charge [Dkt. 13-7] at 1. Ms. Walker asserts that she assisted Children's Human Resources Department (HR) respond to Ms. Faulkner's ADA charge filed with the Equal Employment Opportunity Commission (EEOC). *See* Opp'n [Dkt. 15] at 3. Despite being named in Ms. Faulkner's charge, Ms. Walker concedes by silence that she did not inform anyone at Children's of her January 23, 2014 conversation with Mses. Palmer and Faulkner.

Rosemary Carr, then-Children's Workers' Compensation Coordinator, learned that a recording existed of the January 23, 2014 conversation at some point during the processing of the two women's workers' compensation cases. Affidavit of Rosemary Carr (Carr Aff.) [Dkt. 13-14] ¶¶ 5-7. When Ms. Carr asked Ms. Walker about a recorded conversation, Ms. Walker answered only that she was unaware that any conversations had been recorded. *Id*. ¶¶ 7-8. Again, Ms. Walker volunteered no information about the content of the discussion she had had.

On April 20, 2015, a copy of the recorded conversation was received by Denise Clark in Children's HR Department. Affidavit of Denise Clark (Clark Aff.) [Dkt. 13-12] ¶ 7. Ms. Clark promptly brought the recording to Dr. DuPlessis and Ms. Wadley on that date. *Id.* ¶ 8; *see also* Affidavit of Paula Wadley (Wadley Aff.) [Dkt. 13-13] ¶ 6. On April 23, 2015, Ms. Wadley and Dr. DuPlessis decided to terminate Ms. Walker. Clark Aff. ¶¶ 9-10; Wadley Aff. ¶ 7. In a termination letter she was given on April 28, 2015, Ms. Walker was informed:

> This action has been deemed necessary as we have determined that you engaged in providing deceitful information to two former employees, which is a violation of Children's National's Code of Conduct and Corrective Action Procedure and as a member of Management, a serious breach of integrity. More specifically, on April 20, 2015, Human Resources received a taped recorded conversation amongst you, Tamika Palmer and Sheralysta Faulkner (both former employees) on or about January 23, 2014. We allowed you an opportunity to listen to the taped recording and it was determined that you made repeated inaccurate statements alluding to the former employees they could lose their jobs if they pursue filing a worker's compensation claim, disclosed confidential information concerning the circumstances of another former employee's termination, and made colluding statements in an effort to deceive the Hospital, which has created unnecessary risk for the Hospital and last year, major disruption to the Fetal Medicine Clinic.

Mot., Ex. G, Termination Letter [Dkt. 13-8]. Mses. Wadley and Clark aver that the decision to terminate Ms. Walker's employment was made without consideration of the fact that Ms. Walker was soon to be interviewed by an EEOC investigator. Clark Aff. ¶¶ 14-15; Wadley Aff. ¶¶ 11, 13. In point of fact, Ms. Wadley states that neither she nor Dr. DuPlessis knew anything about Ms. Walker's upcoming interview regarding Ms. Faulkner's ADA charge at that time. Wadley Aff. ¶ 11. Ms. Walker was interviewed by the EEOC investigator two days after her discharge, as originally scheduled. *See* Walker Dep. at 222.

Children's Code of Conduct prohibits the improper use of hospital information, including employee information. *See* Mot., Ex. I, Children's Code of Conduct [Dkt. 13-10] at 5

6

("To protect individuals against misuse of information identifiable to them, no disclosure of . . . employee information may be made except where permitted by Hospital policy and following appropriate procedure."), 22-23.  The Code also prohibits disclosure of confidential information. *See id*. at 5 ("No employee may, during the term of employment or thereafter, use or disclose to others, any confidential information obtained during the course of employment."), 23-24. Failure to comply with the Code can result in disciplinary action, which "may, when appropriate, include dismissal." *Id*. at 34.  Children's also has a "Corrective Action" policy that provides a "general sequence of progressive corrective action; however, depending on the nature and severity of the conduct and other relevant circumstances, some or all of the following steps may be skipped." Mot., Ex. J, Corrective Action Memo [Dkt. 13-11] at 1.  The Corrective Action Memo goes on to list four "[f]ormal corrective action[] steps":  "First Written Notice," "Second Written Notice," "Final Notice," and "Termination." *Id*. at 2.

        Children's moved for summary judgment arguing Ms. Walker cannot meet the required but-for causation to establish a Title VII claim of retaliation because the undisputed facts show that Children's terminated Ms. Walker based on misconduct in a conversation with her subordinates, not in retaliation for engaging in protected activity.  Mot. [Dkt. 13-1].  Ms. Walker opposed, Opp'n [Dkt. 15], and Children's replied.  Reply [Dkt. 26].  The motion is ripe for review.

## II.  LEGAL STANDARD

### A. Motion for Summary Judgment – Rule 56

        Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir.

2011).  A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson*, 477 U.S. at 248, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  In ruling on a motion for summary judgment, the court gives the non-movant the benefit of all permissible inferences that may be drawn from the facts alleged in the complaint, and accepts the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255; *Talavera*, 638 F.3d at 308.  A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position.  *Anderson*, 477 U.S. at 252.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Id*.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

**B. Americans with Disabilities Act, 42 U.S.C. 12101, *et seq*.**

The ADA protects employees from discrimination based on disabilities and retaliation for opposing discriminatory employment practices aimed at those with disabilities.  *See* 42 U.S.C. §§ 12112, 12203 ("No person shall discriminate against any individual because

such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.").[1]  To establish a *prima facie* case of retaliation, an employee must establish that: (1) she made a charge or opposed a practice made unlawful by the ADA, (2) the employer took a materially adverse action against her, and (3) "'there existed a causal link between the adverse action and the protected activity.'"  *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (quoting *Jones v. Wash. Metro. Area Transit Auth.*, 205 F.3d 428, 433 (D.C. Cir. 2000)).  After Plaintiff establishes the prima facie case of retaliation, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's" termination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Smith*, 430 F.3d at 455 (extending the *McDonnell Douglas* burden shifting framework to ADA retaliation claims).

When the employer "asserts a legitimate, nondiscriminatory reason for adverse employment action," the court then considers "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis."  *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008).  The Court evaluates all of the evidence presented and determines "whether [Plaintiff] has put forward enough evidence to defeat the proffer and support a finding of retaliation."  *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007).  At the summary judgment stage, "the only question is

---

[1] "Courts of appeals routinely apply the same standards to evaluate Title VII claims as they do ADA claims, ADEA claims, and even ERISA claims."  *Brown v. Brody*, 199 F.3d 446, 456 n.10 (D.C. Cir. 1999), *abrogated on other grounds by Steele v. Schafer*, 535 F.3d 689 (D.C. Cir. 2008).

whether the employee's evidence creates a material dispute on the ultimate issue of retaliation 'either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)); *see also Nurriddin v. Bolden*, 818 F.3d 751, 758 (D.C. Cir. 2016) ("The one central inquiry that remains is whether a reasonable jury could infer retaliation or discrimination from all the evidence."); *Hargrove v. AARP*, No. 13-1320, 2016 WL 4734322, at *13 (D.D.C. Sept. 9, 2016).

The D.C. Circuit has held that the framework for analyzing anti-retaliation suits under the ADA mirrors that applied for retaliation suits under Title VII of the Civil Rights Act. *See Smith*, 430 F.3d at 455. To defeat a motion for summary judgment on a Title VII retaliation claim, an employee must prove a retaliation claim according to traditional principles of but-for causation. *Univ. of Tex. SW Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."). Title VII "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*. at 2533. Thus, there is no "mixed motive" retaliation. Plaintiff is not, however, required to show that the protected activity was the sole reason for her termination. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 n.10 (1976) (holding that Title VII does not require plaintiff to "show that he would have in any event been rejected or discharged solely on the basis of" the protected characteristic); *Ponce v. Billington*, 679 F.3d 840, 846 (D.C. Cir. 2012) (finding "nothing in Title VII requires a plaintiff to show that illegal discrimination was the sole cause of an adverse employment action"). Under the direction of the D.C. Circuit in *Smith*, the Court will

apply the but-for cause standard to evaluate a putative ADA retaliation claim if Plaintiff amended her complaint.

### III. ANALYSIS

Title VII protects employees from retaliation for opposing discriminatory employment practices, or making a charge, testifying, assisting, or otherwise participating in an investigation, proceeding, or hearing related to discriminatory employment practices *under that subchapter*. *See* 42 U.S.C. § 2000e-3(a). Therefore, to advance a Title VII retaliation claim, the underlying protected activity must be related to Title VII. Although Ms. Walker alleges, and Children's responds to, a claim of Title VII retaliation, the underlying EEO action pertains to an ADA claim, not Title VII. Any corresponding retaliation claim must have also been raised under the ADA, not Title VII. Ms. Walker's reliance on the wrong statute requires either dismissal or an amended complaint.[2]

Rule 15 of the Federal Rules of Civil Procedure governs the filing of amended pleadings, such as a complaint, after a responsive pleading has been filed. *See* Answer [Dkt. 3]. As relevant here, it specifies that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The grant or denial of leave lies in the sound discretion of the district court. *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). A court may

---

[2] The Court has original jurisdiction over this action because it is a "civil action arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Complaint pleads a violation of Title VII, which is a federal law under the original jurisdiction of the federal district courts. *See* 42 U.S.C. § 2000e *et seq*. Venue is proper as the events alleged in the Complaint occurred in the District of Columbia. Had Ms. Walker properly alleged a retaliation claim under the ADA, jurisdiction and venue would still be proper with this Court. The ADA is a law of the United States and actions under the ADA proceed according to the "powers, remedies, and procedures" set forth in Title VII. 42 U.S.C. § 12117(a).

deny leave to amend with sufficient reason, such as futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by previous amendments. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court assumes that, once informed of the flawed pleading, Ms. Walker would seek leave to amend her pleadings to plead retaliation in violation of the ADA. However, at the brink of summary judgment, it is terribly late to discover such a fatal pleading flaw. In addition to the significant delay and potential prejudice to Children's, which defended and moved for summary judgment on the claim as plead, the Court finds that the amendment would be futile. In light of its conclusion that Children's had a legitimate nondiscriminatory reason for its termination decision and Ms. Walker's failure to contest the facts on which that conclusion is based, the Court finds even under an ADA retaliation theory Ms. Walker's claim must fail.

Ms. Walker alleges that she was retaliated against when she was terminated by Children's in April 2015. She argues that Children's terminated her because she was going to be interviewed by an EEOC investigator with respect to a claim raised by a former Children's employee that she used to supervise. Children's argues that Ms. Walker was terminated "because of her misconduct toward her subordinates in the recorded conversation with Ms. Palmer and Ms. Faulkner." Mot. at 14. Specifically, Children's argues that Ms. Walker's statements to her subordinates "violated numerous [Children's] polices and a manager's duty of loyalty to her employer," and that Dr. DuPlessis and Ms. Wadley decided to terminate Ms. Walker without consideration or knowledge of her involvement in the EEOC process concerning Ms. Faulkner's ADA charge. *Id*. at 14-15; *see also* Clark Aff. ¶¶ 14-15; Wadley Aff. ¶¶ 11, 13.

Ms. Walker responds that the temporal proximity between her discharge and her EEOC interview, as well as the fact that Children's did not apply its normal progressive

discipline policy, demonstrate that she was fired because of protected activity. She further responds that Children's expressed nondiscriminatory reason was merely a pretext to hide retaliation. Additionally, Ms. Walker argues that her supervisors were aware of her involvement in the EEOC process because Ms. Faulkner specifically named Ms. Walker in her EEOC charge. *See* Faulkner ADA Charge at 1.

The Court considers, taking the undisputed facts and evidence presented in the light most favorable to Ms. Walker, whether Ms. Walker has shown facts from which a reasonable juror could find that Children's would not have fired Ms. Walker but for her involvement in protected activity. The fact that Ms. Walker was *named* in Ms. Faulkner's ADA charge provides no solace to Ms. Walker: she was accused of having intimidated Ms. Faulkner, *i.e.,* of having been a discriminating official. *See id*. An employer does not retaliate for protected activities when it discharges a supervisor accused in an EEO charge of violating employee rights. Even if one assumed, without facts, that either Dr. DuPlessis or Ms. Wadley, or both, knew that Ms. Walker was named in Ms. Faulkner's 2014 ADA charge, that assumption would do nothing to contradict Ms. Wadley's sworn and uncontested statement that neither she nor Dr. DuPlessis knew of Ms. Walker's 2015 appointment to be interviewed by an investigator for the EEOC.[3] *See* Wadley Aff. ¶ 11. Ms. Walker offers no evidence except temporal proximity and supposed variation from Children's traditional discipline policy to overcome Ms. Wadley's testimony.

---

[3] The record is clear that Ms. Carr and Ms. Clark knew of Ms. Walker's involvement in the EEOC investigation, but neither was involved in the decision to terminate Ms. Walker. Dr. DuPlessis and Ms. Wadley were Ms. Walker's supervisors and made the decision to discharge her. *See* Wadley Aff. ¶ 7. Ms. Walker makes no argument to the contrary.

While temporal proximity alone may support a prima facie case, at this point in the proceedings, after Children's has proffered legitimate reasons for its action, Ms. Walker's burden is more than just articulating a prima facie case. "[W]hen an employer comes forward with a legitimate, nonretaliatory reason for an employment action, 'positive evidence beyond mere proximity' is required 'to create a genuine issue of material fact concerning whether the motive for [an adverse employment action] was . . . retaliation." *Minter v. District of Columbia*, 809 F.3d 66, 71-72 (D.C. Cir. 2015) (quoting *Solomon v. Vilsack*, 763 F.3d 1, 16 (D.C. Cir. 2014)); *see also Woodruff*, 482 F.3d at 530 ("If temporal proximity sufficed to rebut a legitimate proffer, then protected activities would effectively grant employees a period of immunity, during which no act, however egregious, would support summary judgment for the employer in a subsequent retaliation claim.").

Ms. Walker protests that Children's failed to follow its normal course of progressive discipline and jumped to an immediate discharge, which also evidences pretext in its rationale. Although failure to follow the typical procedure when disciplining an employee may support a finding that a given non-retaliatory reason was mere pretext, such cases typically occur when there is no explanation or justification for the deviation. *See Lathram v. Snow*, 336 F.3d 1085, 1093-94 (D.C. Cir. 2003) (holding that a jury could infer discrimination where an agency departed from its normal process without justification). *Lathram* stated that "an unexplained inconsistency can justify an inference of discriminatory motive." *Id.* at 1093. Here, however, Children's Corrective Action Memo contains its own exception: "depending on the nature and severity of the conduct and other relevant circumstances, some or all of the following steps may be skipped." Corrective Action Memo at 1. Ms. Walker's supervisors immediately believed that

her conduct was a "terminable offense," Clark Aff. ¶ 13, Wadley Aff. ¶ 10, and nothing in the Corrective Action Memo limited their action or suggests an unexplained inconsistency.

Most critically, Ms. Walker admits (as she must) that it was her voice on the tape and that she said the things recited above. *See* Walker Dep. at 99-100, 102, 121-22, 131. She also admits that much of what she said should not have been said, including that Children's would "chew you up and spit you out" for filing a worker's comp claim, the employees could be dismissed from their jobs for filing a claim, and another employee had been terminated for filing an FMLA claim. *Id*. Her acknowledgement that she spoke improperly to Ms. Faulkner eviscerates her effort to show that "but for" some protected activity, she would not have been discharged.

The Court finds that "all the evidence, taken together, [is] insufficient to support a reasonable inference" of retaliation. *Jones v. Bernanke*, 557 F.3d at 678.

**IV.**

Ms. Walker has no claim under Title VII, on which she rested her Complaint and brief. For the reasons stated above, it would be futile, even if appropriate at this late stage in the case, to allow her to amend her complaint to allege retaliation under the ADA because her claim has no merit. The Complaint will be dismissed and Children's Motion for Summary Judgment, Dkt. 13, will be denied as moot.

A memorializing Order accompanies this Opinion.

Date: February 21, 2017                              /s/
                                            ROSEMARY M. COLLYER
                                            United States District Judge